1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BENJAMIN BUNTON,                    | Case No.  1:23-cv-00104-HBK (PC)

12              Plaintiff,               | SCREENING ORDER DIRECTING
                                          | PLAINTIFF TO FILE NOTICE TO:
13        v.
                                          | STAND ON THE COMPLAINT AND
14   CITY OF FRESNO POLICE DEPT., ET      | VOLUNTARILY DISMISS DEFENDANTS
     AL.,                                 | AND OTHER CLAIMS DEEMED NOT
15                                        | COGNIZABLE; OR,
              Defendants.
16                                        | STAND ON COMPLAINT SUBJECT TO
                                          | COURT RECOMMENDING DISMISSAL OF
17                                        | DEFENDANTS AND CLAIMS DEEMED
                                          | NOT COGNIZABLE TO THE DISTRICT
18                                        | COURT[1]

19                                        | (Doc. No.  7)

20                                        |  JULY 21, 2023, DEADLINE

21

22        Pending before the Court for screening under 28 U.S.C. § 1915A is the pro se civil rights

23   first amended complaint filed under 42 U.S.C. § 1983 by Benjamin Bunton—a prisoner.  (Doc.

24   No. 7, "FAC").  Upon review, the Court finds the FAC states a cognizable Fourth Amendment

25   claim against Defendants Fresno City Police Officers 1, 2, and 3.  The FAC fails to state any

26   other cognizable claims.

27   _____

28   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2022).

1

**SCREENING REQUIREMENT**

2         A plaintiff who commences an action while in prison is subject to the Prison Litigation

3   Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief

4   against a governmental entity, its officers, or its employees before directing service upon any

5   defendant.  28 U.S.C. § 1915A.  This requires the court to identify any cognizable claims and

6   dismiss the complaint, or any portion, if is frivolous or malicious, if it fails to state a claim upon

7   which relief may be granted, or if it seeks monetary relief from a defendant who is immune from

8   such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

9         At the screening stage, the court accepts the factual allegations in the complaint as true,

10  construes the complaint liberally, and resolves all doubts in the plaintiff's favor.  *Jenkins v.*

11  *McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir.

12  2003). The Court's review is limited to the complaint, exhibits attached, and materials

13  incorporated into the complaint by reference, and matters of which the court may take judicial

14  notice.  *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014); *see also* Fed. R. Civ.

15  P. 10(c).  A court does not have to accept as true conclusory allegations, unreasonable inferences,

16  or unwarranted deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.

17  1981).  Critical to evaluating a constitutional claim is whether it has an arguable legal and factual

18  basis.  *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

19        The Federal Rules of Civil Procedure require only that a complaint include "a short and

20  plain statement of the claim showing the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).

21  Nonetheless, a claim must be facially plausible to survive screening.  This requires sufficient

22  factual detail to allow the court to reasonably infer that each named defendant is liable for the

23  misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*,

24  572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not

25  sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.

26  *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.  Although detailed factual allegations are not

27  required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

28  statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required

1    to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir.

2    2009) (internal quotation marks and citation omitted).

3           The Rules permit a complaint to include all *related claims* against a party and permit

4    joinder of all defendants alleged to be liable for the "same transaction, occurrence, or series of

5    transactions or occurrences" where "any question of law or fact common to all defendants will

6    arise in the action." Fed. R. Civ. P. 18(a) and 20(a)(2) (emphasis added). But the Rules prohibit

7    conglomeration of unrelated claims against unrelated defendants in a single lawsuit. A litigant

8    must file unrelated claims in separate lawsuits.

9           If an otherwise deficient pleading can be remedied by alleging other facts, a pro se litigant

10   is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v.*

11   *Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d

12   245, 248 (9th Cir. 1995). However, it is not the role of the court to advise a pro se litigant on how

13   to cure the defects. Such advice "would undermine district judges' role as impartial

14   decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131

15   n.13. Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad

16   faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by

17   amendments previously allowed . . . ." *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892

18   (9th Cir. 2010).

19                              **SUMMARY OF THE COMPLAINT**

20          On February 7, 2022 Plaintiff was staying at the Roadway Inn, located at 4141 N.

21   Blackstone Avenue in Fresno. As Plaintiff was returning to the motel, a security guard ("Guard

22   1") for the motel told Plaintiff he was not allowed on the property even though Plaintiff had paid

23   for his room. (Doc. No. 7 at 7). Plaintiff called Fresno Police and Guard 1 "began to harass and

24   threaten" Plaintiff while he was standing on public property. (*Id.*). Guard 1 then attempted to

25   attack Plaintiff with a night stick. (*Id.*).

26          Fresno Police arrived the next day, at which point Plaintiff filed a complaint. (*Id.*). A

27   second security guard ("Guard 2") "made numerous threats" and Plaintiff left the area without his

28   property, which he later discovered was thrown away or stolen. (*Id.*).

1    Three days later, on February 10, 2022, Plaintiff was passing an abandoned building and

2  went to the bushes to relieve himself.  (*Id*.).  As he approached the building Plaintiff "saw two

3  Fresno Police officers and [Guard 1] coming out of the real [sic] of inside of the building."  (*Id*.).

4  Plaintiff turned around to leave when "two . . . more Fresno Police" and Guard 2 yelled "we got

5  your ass now."  (*Id*.).  One police officer ("Officer 1") "pointed his weapon and stated, 'get on the

6  ground or I'll blow your fucking face off'" and Guard 2 stated, "we're going to fuck you up

7  now."  (*Id*.).  Plaintiff raised his hands and as he went to his knees Guard 2 tased him twice.  (*Id*.).

8  Guard 1 stated, "Fuck this mother fucker" and "began to push and punch [Plaintiff] in the body

9  and face."  (*Id*. at 7-8).  Guard 2 tased Plaintiff two more times while Officer 1 held Plaintiff at

10  gun point.  (*Id*. at 8).  Guards 1 and 2 and Officers 2 and 3 "were taking turns kicking and

11  punching [Plaintiff] while Fresno Police Officer #4 was out on the sidewalk."  (*Id*.).  Eventually a

12  corporal and sergeant arrived on the scene and Plaintiff was taken to a police station where he

13  was held for "what seemed like . . . two hours without medical attention."  (*Id*.).  Plaintiff was

14  then taken to the Fresno County Jail.  (*Id*.).  After being released, on February 11, 2022, Plaintiff

15  went to the community hospital emergency room where he was diagnosed with a head injury,

16  cracked ribs and other injuries.  (*Id*.).

17    The FAC describes another assault, which took place on February 14, 2022, where Guard

18  2 attacked Plaintiff with "loaded" gloves.  (*Id*.).  Guard 2 split Plaintiff's upper lip and cracked

19  his right jaw.  (*Id*.).  Guard 2 was arrested after drawing a gun, pointing it at Plaintiff and telling

20  Plaintiff he would kill him.  (*Id*.).  Plaintiff states "these actions was [sic] all captured on video."

21  (*Id*.).

22    The FAC alleges claims based on "deprivation of property and leberty [sic]" (Claim 1)

23  and "freedom to equal protection" (Claim 2). (*Id*. at 4).  He seeks as relief $1.5 million, $150,000

24  "for loss of property and relocation expenes [sic]", "and other relief the court deems fair."  (*Id*. at

25  5).[2]

26

27  [2] The undersigned notes Plaintiff states on the face of his FAC that he did not exhaust his administrative remedies and believes such a requirement does not apply to him.  (Doc. No. 7 at 2).  This Court is not aware of precedent that interprets the exhaustion requirement under the PLRA to apply to claims that arose

28  prior to a plaintiff-prisoner's incarceration.  At this stage of the proceeding, the undersigned does not

1        **APPLICABLE LAW AND ANAYSIS**

2        **A.  Individual and Official Capacity**

3            The FAC states, "while operating in their official capcity [sic], the defendants did and

4    willfully violate the Plaintiff's rights against cruel and unusal [sic] punishment."  (Doc. No. 7 at

5    3).  The capacity in which the official acted when engaging in the alleged unconstitutional

6    conduct does not determine the capacity in which the official is sued.  *See Hafer v. Melo*, 502

7    U.S. 21, 26 (1991) (Official capacity "is best understood as a reference to the capacity in which

8    the state officer is sued, not the capacity in which the officer inflicts the alleged injury."); *Price v.*

9    *Akaka*, 928 F.2d 824, 828 (9th Cir. 1991).  Because Plaintiff does not specifically state that he is

10   *suing* Defendants in their official capacity the Court declines to apply the additional pleading

11   requirements for official capacity claims.

12           Moreover, the FAC does not adequately state an official capacity claim against any of the

13   Fresno City Police Officers.  In particular, a claim against any official in his or her official

14   capacity is the same as suit against the employing agency—here, the city of Fresno.  *Monell v.*

15   *New York Dep't of Social Services*, 436 U.S. 685, 690 n. 55 (1978).  However, an official

16   capacity claim cannot proceed unless a complaint alleges facts to establish that official acted

17   pursuant to a policy or custom.  *Id*.  Here, the FAC contains no allegations that any of the Fresno

18   Police Officers acted pursuant to a policy or custom.

19       **B.  Color of State Law and Federal Rule of Civil Procedure 8**

20           Section 1983 allows a private citizen to sue for the deprivation of a right secured by

21   federal law.  *See* 42 U.S.C. § 1983; *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017).  "To

22   establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the

23   Constitution and laws of the United States, and (2) that the deprivation was committed by a

24   person acting under color of state law."  *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143,

25   1149 (9th Cir. 2011) (citing *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003)); *Soo Park v.*

26

27   opine on whether such a requirement exists and will leave the issue to be briefed by the parties if
     appropriate at a later stage of this proceeding.
28

5

1    *Thompson*, 851 F.3d 910, 921 (9th Cir. 2017).   "The 'under color of law' requirement under

2    § 1983 is the same as the Fourteenth Amendment's 'state action' requirement."  *Chudacoff* at

3    1149 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928 (1982)).

4            Action taken by a private individual may be 'under color of state law' where there is

5    'significant' state involvement in the action."  *Howerton v. Gabica,* 708 F.2d 380, 382 (9th

6    Cir.1983).  The extent of state involvement in the action is a question of fact.  *Id.* at 383. "The

7    [Supreme] Court has articulated a number of tests or factors to determine when state action is

8    'significant.'"  *Id.* at 382–383 (collecting cases).  Under the joint action test, a private party acts

9    under color of state law if "he is a willful participant in joint action with the State or its

10   agents."  *Dennis v. Sparks,* 449 U.S. 24, 27 (1980).  Under the governmental nexus test, a private

11   party acts under color of state law if "there is a sufficiently close nexus between the State and the

12   challenged action of the regulated entity so that the action of the latter may be fairly treated as

13   that of the State itself."  *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974); cf.

14   *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614 (1991) (constitutional deprivation caused by

15   private party involves state action if claimed deprivation resulted from exercise of a right or

16   privilege having its source in state authority); *West v. Atkins,* 487 U.S. 42, 54 (1988) (a private

17   physician under contract with a state to provide medical services to inmates was a state actor for

18   purposes of section 1983).

19           Fresno City Police Officers are state actors and can be the subject of a section 1983 action.

20   Plaintiff also alleges that private security guards for Roadway Inn Motel participated in the

21   February 10, 2022 use of force incident along with Fresno Police Officers, raising the possibility

22   that the security officers, although private actors, acted under color of state law.  "Generally, the

23   acts of private security guards, hired by a store, do not constitute state action under § 1983."

24   *Josey v. Filene's, Inc.,* 187 F.Supp.2d 9, 16 (D.Conn.2002) *(citing Harris v. Security Co. of 1370*

25   *Sixth Avenue,* 1996 WL 556927, *2 (S.D.N.Y.1996); *Moher v. Stop & Shop Cos., Inc.,* 580 F.

26   Supp. 723 (D.Conn.1984)); *Bishop,* 414 F.Supp.2d at 396–97.  However, "[p]rivate security

27   guards are engaged in 'state action' when they enter into agreements with police pursuant to

28   which the security guards carry out the policemen's directions.  Security guards who carry out

6

1   such directions are exercising the state's function and are treated as if they were state officials.

2   But if a security guard is acting independently, his conduct is judged under state tort law

3   principles (*e.g.,* false arrest, malicious prosecution, and battery) rather than being judged under

4   the Fourth Amendment principles." *Carr v. City of Chicago*, 669 F. Supp. 1418, 1419 (N.D. Ill.

5   1987).

6          The FAC does not allege facts indicating that the Roadway Inn security guards were

7   acting under direction from the Fresno Police officers.  He only asserts that on one occasion

8   (February 10, 2022) four Fresno police officers and two security guards used excessive force

9   against him. (Doc. No. 7 at 7).  By contrast, in Plaintiff's first encounter with the Roadway Inn

10  security guards, Plaintiff called Fresno Police for help and an officer came to document his

11  complaint, belying the idea that they were acting in concert.  (*Id.*).  Because there is no indication

12  that the security guards were not acting independently, the FAC fails to establish that they were

13  state actors and therefore subject to section 1983.

14          **C. Excessive Force**

15          The Fourth Amendment requires law enforcement officers making an arrest to use only an

16  amount of force that is objectively reasonable in light of the circumstances facing them.  *Graham*

17  v. *Connor*, 490 U.S. 386, 395 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985).  Determining

18  the objective reasonableness of a particular use of force requires balancing "'the nature and

19  quality of the intrusion on the individual's Fourth Amendment interests' against the

20  countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Garner*, 471

21  U.S. at 8).  Under this standard, "'[t]he force which [i]s applied must be balanced against the need

22  for that force; it is the need for force which is at the heart of the *Graham* factors.'" *Liston v.*

23  *County of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997) (quoting *Alexander v. City & County of*

24  *San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994)).  In the final analysis, "[f]orce is excessive

25  when it is greater than is reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846,

26  854 (9th Cir. 2002) (citing *Graham*, 490 U.S. at 395).

27          1.  February 10, 2022 Incident

28          Plaintiff states that on February 10, 2022, a Fresno City Police Officer (Officer 1) pointed

1   his gun at him and told Plaintiff to "get on the ground or I'll blow your fucking face off." (Doc.

2   No. 7 at 7). Plaintiff complied, raising his hands "to show that [he] did not have a weapon" and

3   went to his knees. (*Id.*). One of the Roadway Inn security guards tased Plaintiff twice. (*Id.*).

4   While Officer 1 continued to hold Plaintiff at gunpoint two other police officers (Officers 2 and

5   3) and two security guards "[took] turns kicking and punching [Plaintiff]" while a fourth police

6   officer stood on the sidewalk. (Doc. No. 7 at 8). Plaintiff states that he suffered a head injury,

7   cracked ribs, and other injuries as a result of the assault. (*Id.*).

8         The FAC adequately alleges a Fourth Amendment excessive use force claim against

9   Officers 2 and 3. Based on the facts alleged, Plaintiff did not pose a threat to any of the officers

10   or the public at the time of the use of force. Plaintiff was outnumbered six to one and made clear

11   that he did not have a weapon and was complying with the officers' orders. Plaintiff was kicked

12   and punched by the officers after already having been tased multiple times, putting his hands up,

13   and lowering to his knees. Based on the circumstances presented to the officers, it was not

14   reasonable to believe that further force was needed. Accordingly, the FAC states a Fourth

15   Amendment claim against Officers 2 and 3.

16         Because Officers 1 and 4 did not apply any force to Plaintiff they are not directly liable for

17   excessive use of force under the Fourth Amendment. Nor can Plaintiff state a section 1983 claim

18   against the Roadway Inn security officers because, as discussed *supra*, they are private actors and

19   there are no facts indicating they were acting under color of state law.

20         2.   February 14, 2022 Incident

21         Plaintiff asserts that on February 14, 2022 he was again attacked by Guard 2, who

22   punched him with "loaded" gloves, splitting Plaintiff's upper lip and cracking his jaw. (*Id.* at 8).

23   For the reasons discussed *supra*, Plaintiff cannot state a constitutional claim against Guard 2 for

24   this incident because security guards are presumed to be acting as private individuals, and there

25   are no facts supporting the inference that Guard 2 was acting under color of state law.

26       **D.  Duty to Intercede**

27         "[P]olice officers have a duty to intercede when their fellow officers violate the

28   constitutional rights of a suspect or other citizen." *United States v. Koon*, 34 F.3d 1416, 1447 n.

1    25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996).  However, officers can be held

2    liable for failing to intercede only if they had an opportunity to intercede.  *See Bruner v.*

3    *Dunaway*, 684 F.2d 422, 426–27 (6th Cir. 1982) (holding that officers who were not present at

4    the time of the alleged assault could not be held liable in a section 1983 action).

> In these cases, the constitutional right violated by the passive
> defendant is analytically the same as the right violated by the person
> who strikes the blows.  Thus, an officer who failed to intercede when
> his colleagues were depriving a victim of his Fourth Amendment
> right to be free from unreasonable force in the course of an arrest
> would, like his colleagues, be responsible for subjecting the victim
> to a deprivation of his Fourth Amendment rights.

*United States v. Koon*, 34 F.3d 1416, 1447, n.25 (9th Cir. 1994), *aff'd in part, rev'd in part*, 518

U.S. 81 (1996).

Liberally construed, the FAC alleges a Fourth Amendment claim of failure to intercede

against Officers 1 and 4, who were present when he was assaulted but did nothing to stop the

assault.  Officer 1 held Plaintiff at gunpoint while two other police officers and two security

guards kicked and punched Plaintiff.  Officer 1 thus had a duty to intercede when he witnessed

his fellow officers using excessive force against Plaintiff but failed to intervene, and indeed

facilitated the assault by holding Plaintiff at gunpoint.  Thus, the FAC states a cognizable Fourth

Amendment claim against Officer 1.  Plaintiff states that Officer 4 "was out on the sidewalk"

during the assault.  (Doc. No. 7 at 8).  It is unclear how far Officer 4 was from the scene of the

use of force, and therefore the undersigned cannot discern from the facts that Officer 4 was aware

of the assault taking place and that he "had an opportunity to intercede."  *Bruner*, 684 F.2d at

426–27.  Accordingly, the FAC fails to state a Fourth Amendment claim as to Officer 4.

**E.  Doe Defendants**

Plaintiff does not provide names or other identifying information for any of the defendants

in this matter, including the four City of Fresno Police officers and the two security guards who

he alleges committed the assault.  (*See* Doc. No. 7).  Rule 10(a) of the Federal Rules of Civil

Procedure requires a plaintiff to include the names of the parties sued in the action.  Fed. R. Civ.

P. 10(a).  The use of Doe defendants is generally disfavored in federal court because the United

1    States Marshal cannot serve a summons and complaint on an anonymous defendant.  *See*

2    *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Plaintiff provides the date of the incident

3    and the approximate location; however, this is insufficient by itself to serve the officers in

4    question.

5          "A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, and

6    so on, but he must allege sufficient facts to show how each doe defendant individually violated

7    his constitutional rights.  If the plaintiff does so, he may be given leave to obtain the names of doe

8    defendants during discovery and seek leave to amend to name those defendants."  *Finefeuiaki v.*

9    *Maui Police Dep't*, 2018 WL 4839001, at *3 (D. Haw. Oct. 4, 2018) citing *Wakefield v.*

10   *Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).

11         Here, because Plaintiff has stated a cognizable claim as to Defendants Officers 1, 2, and 3,

12   the undersigned will permit the FAC to proceed and Plaintiff will have an opportunity to conduct

13   discovery for the limited purpose of identifying the three officers and file an amended complaint

14   providing their names.

15        **F. Municipal Liability**

16         "[M]unicipalities and other local government units . . . [are] among those persons to

17   whom § 1983 applies." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *see also Bd. of*

18   *Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Hyun Ju Park v. City & Cnty. of Honolulu*,

19   952 F.3d 1136, 1141 (9th Cir. 2020) ("A municipality may be held liable as a 'person' under 42

20   U.S.C. § 1983 when it maintains a policy or custom that causes the deprivation of a plaintiff's

21   federally protected rights.").

22         Municipal liability claims under § 1983 require a plaintiff to show an underlying

23   constitutional violation.  *See Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).

24   *See also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983

25   suits, a plaintiff must plead that each Government-official defendant, through the official's own

26   individual actions, has violated the Constitution.").  Therefore, a plaintiff must go beyond the

27   respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation

28   was the product of a policy or custom of the local governmental unit, because municipal liability

1    must rest on the actions of the municipality, and not the actions of the employees of the

2    municipality.  *See Brown*, 520 U.S. at 403; *City of Canton*, 489 U.S. at 385; *Monell*, 436 U.S. at

3    690–91; *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016) (en banc); *Pasadena*

4    *Republican Club v. Western Justice Center*, 985 F.3d 1161, 1172 (9th  Cir. 2021) ("To establish

5    *Monell* liability under § 1983, the constitutional violation must be caused by a municipality's

6    'policy, practice, or custom' or be ordered by a policy-making official") (citation omitted); *Fogel*,

7    531 F.3d at 834; *Webb*, 330 F.3d at 1164; *Hopper*, 241 F.3d at 1082; *Blair v. City of Pomona*, 223

8    F.3d 1074, 1079 (9th Cir. 2000); *Oviatt v. Pearce*, 954 F.2d 1470, 1473–74 (9th Cir. 1992). *See*

9    *also Connick v. Thompson*, 563 U.S. 51, 60 (2011) (explaining that to impose liability on a local

10   government under § 1983 the plaintiffs must prove that an "action pursuant to official municipal

11   policy" caused their injury); *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 845 (9th Cir. 2016)

12   (same); *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1167–68 (9th Cir. 2014)

13   (same).

14          Here, Plaintiff names as a Defendant the City of Fresno Police Department.  (Doc. No. 7

15   at 1).  The Police Department, as an agency of city government, is a municipal entity and only

16   subject to § 1983 claims if municipal employees committed constitutional violations pursuant to

17   official policies, practices, or customs.  *See Pasadena Republican Club*, 985 F.3d at 1172.  While

18   the undersigned finds that Plaintiff states a cognizable constitutional claim against three of the

19   Fresno police officers, the FAC is devoid of facts indicating that the unconstitutional actions

20   resulted from official policies, practices, or customs of the City of Fresno.  Accordingly, the FAC

21   fails to state a claim as to Defendant City of Fresno Police Department.

22          **F.  Deprivation of Property**

23          Liberally construed, Plaintiff alleges that he was deprived of his property in violation of

24   the Fifth Amendment on February 8, 2022, after Guard 2 "made numerous threats" and Plaintiff

25   "left the area without [his] property that was later discovered was thown [sic] away or stolen."

26   (Doc. No. 7 at 7).  In order to state a claim, Plaintiff must plead sufficient factual detail to allow

27   the court to reasonably infer that each named defendant is liable for the misconduct alleged.

28   *Iqbal*, 556 U.S. at 678.  Here, Plaintiff does not identify who was responsible for throwing away

1   or stealing his property, only that it was "later discovered was thown away or stolen." This is

2   insufficient to infer that any Defendant is liable. Furthermore, to the extent Plaintiff attributes

3   liability to employees of Roadway Inn, they cannot be sued in a section 1983 action because they

4   are not state actors. Accordingly, Plaintiff fails to state a Fifth Amendment claim.

5                                                      **OPTIONS**

6          Liberally construing the FAC and accepting the allegations as true, the Court finds the

7   FAC sufficiently states Fourth Amendment claims against Defendants Fresno City Police Officer

8   1, Officer 2, and Officer 3, but no other claim. To continue the prosecution of this action,

9   Plaintiff must take one of the following options **no later than July 21, 2023**

10         **First Option:** Plaintiff may file a Notice under Rule 41 stating he intends to stand on his

11   current First Amended Complaint as screened herein and proceed only on his Fourth Amendment

12   excessive force claims against Defendants Fresno City Police Officer 2 and Officer 3 and his

13   Fourth Amendment failure to intercede claim against Fresno City Police Officer 1, thereby

14   dismissing Defendants Fresno City Police Officer 4 and Roadway Guard 1 and Guard 2, and the

15   claims the Court deemed not cognizable. The Court would then permit Plaintiff to engage in

16   discovery to ascertain the identify of Fresno City Police Officers 1, 2, and 3 in order that the

17   Court may order service on these Defendants, who has not yet been served, and direct these

18   Defendants to respond the FAC.

19         **Second Option**: Plaintiff may stand on his FAC subject to the undersigned issuing a

20   Findings and Recommendations to dismiss the Defendants and the claims the Court has deemed

21   not cognizable.

22         If Plaintiff fails to timely respond to this Court Order, *i.e.*, fails to elect and notify the

23   Court of any of the three options, the undersigned will recommend that the district court dismiss

24   this case as a sanction for Plaintiff's failure to comply with a court order and for failing to

25   prosecute this action after its determination that the complaint failed to state a claim. *See* Local

26   Rule 110; Fed. R. Civ. P. 41(b).

27         Accordingly, it is **ORDERED:**

28         1.      No later than **July 21, 2023**, Plaintiff shall select one of the following options and

                                                       12

1  deliver to correctional officials for mailing: (a) a Notice that he intends to stand on his First

2  Amended Complaint as screened and proceed on those claims the Court deems cognizable,

3  effectively dismissing the above named Defendants and the claims deemed not cognizable

4  without prejudice under Federal Rule of Civil Procedure 41(a)(1); or (b)  a Notice stating he

5  intends to stand on his current First Amended Complaint subject to the undersigned

6  recommending that the district court dismiss the Defendants and the claims deemed not

7  cognizable.

8       2.       If Plaintiff fails to timely comply with this Court Order or seek an extension of

9  time to comply, the Court will recommend that the district court dismiss this action for Plaintiff's

10  failure to comply with this Court Order and prosecute this action.

11

12  Dated:     June 23, 2023

13                                 HELENA M. BARCH-KUCHTA
                                   UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28